IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael Rufo,                          )
                                       )
            Plaintiff,                 )   Case No. 1:04-CV-698
                                       )
      vs.                              )
                                       )
Dave & Busters, Inc.,                  )
                                       )
            Defendant.                 )

Memorandum and Order

      Plaintiff initiated this action by filing a complaint against his former employer on October 8, 2004.  He asserts claims of age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623, *et seq.*, and Ohio Revised Code ("O.R.C.") §§ 4112.02(I) and 4112.14. He alleges that Defendant refused to promote him from Assistant General Manager to General Manager because of his age and retaliated against him for complaining internally about age discrimination.  This matter is now before the Court on Defendants' motion for summary judgment with respect to all of Plaintiff's claims (Doc. 19).

A.  Background

      Defendant hired Plaintiff to be a Manager-in-Training at its Cincinnati restaurant in 2002 when Plaintiff was 51 years old.  Plaintiff had prior experience in restaurant management and

hoped to be promoted to a General Manager position in Defendant's organization within a short period of time.

At the time of Plaintiff's hire, Derek Robinson was the General Manager of the Cincinnati restaurant, and Brock Anderson was the Regional Operations Director for the region of Defendant's organization that included Cincinnati.  Mr. Robinson evaluated Plaintiff's performance frequently, and his evaluations were generally favorable.  He offered some suggestions for improvement.  Brock Anderson may have expressed some concern to Margo Manning, Defendant's Vice-President for Team Development, about wild stories that Plaintiff told the restaurant staff. Some of those stories involved alien abductions.  For whatever reason, Ms. Manning became concerned about Plaintiff's suitability for a General Manager position.

After one year of employment with Defendant, Plaintiff became the Assistant General Manager of the Cincinnati restaurant.  At approximately the same time, Bernard Carpenter replaced Brock Anderson as the Regional Operations Director for the region including Cincinnati.  Mr. Carpenter was not sanguine about Plaintiff's management capabilities.  He quickly began pressuring Derek Robinson to terminate Plaintiff's employment. He suggested to Mr. Robinson that Plaintiff was not right for management in Defendant's organization.  Plaintiff alleges that the basis for Mr. Carpenter's displeasure with him as a manager

2

was his age.  He alleges that Mr. Carpenter reached his conclusion that Plaintiff was not suitable for management after seeing his white hair and without any other knowledge of Plaintiff.  Evidence identified by Defendant suggests that Mr. Carpenter had, in fact, reviewed performance evaluations of Plaintiff before ever meeting him.

In any event, Derek Robinson did not terminate Plaintiff's employment but, instead, worked with Defendant's Human Resources Department to formulate a plan of improvement for Plaintiff to make him ready for promotion to a general manager's position.  In early 2004, Derek Robinson recommended Plaintiff for the General Manager Finishing School, a stepping stone to promotion.  Before acting upon that recommendation, Bernard Carpenter left the corporation.  In April 2004, Derek Robinson did likewise.

Plaintiff wanted to replace Derek Robinson as General Manager of the Cincinnati restaurant.  Instead, Defendant brought a temporary replacement for Derek Robinson from its Cleveland restaurant.  On May 3, 2004, Plaintiff filed an internal complaint of age discrimination based upon Defendant's failure to promote him or to consider him for the promotion.  On May 7, 2004, Kevin Lambes, the temporary General Manager, was replaced by Scott Ellinger, a 35 year-old lower level manager from Defendant's Columbus restaurant.  Mr. Ellinger had been recruited

3

into upper restaurant-level management in April 2004 by Charlie
Cook, Bernard Carpenter's replacement as Regional Operations
Director.

Plaintiff claims that Scott Ellinger was less qualified
for the General Manager's position than Plaintiff was and that
Defendant preferred him because of his status as a substantially
younger employee and not for any of its proffered reasons.  Those
proffered reasons include Plaintiff's performance deficiencies
and his poor judgment as reflected by his wild stories.  On that
basis, Plaintiff contends that Defendant's failure to promote him
to General Manager amounted to age discrimination in violation of
the ADEA and Ohio law.

After his hire as General Manager of the Cincinnati
restaurant, Scott Ellinger managed Plaintiff in a different
manner than Plaintiff had experienced under Derek Robinson.  Mr.
Ellinger took over many of Plaintiff's management
responsibilities and subjected Plaintiff to a less desirable work
schedule.  On the basis of those unfavorable changes, Plaintiff
alleges both that Defendant retaliated against him, in violation
of the ADEA and Ohio law, for complaining internally about age
discrimination and that Defendant constructively discharged him
from his employment.  Plaintiff resigned his employment some two
months after Scott Ellinger took over management of the
Cincinnati restaurant.

4

In his complaint in this matter Plaintiff asserted claims of discriminatory failure to promote, discriminatory discharge, and retaliation under the ADEA and parallel Ohio statutes and a claim for wrongful discharge in violation of Ohio public policy.  Defendant moved for summary judgment with respect to all of those claims.  In his memorandum in opposition to Defendant's motion, Plaintiff has actually opposed Defendant's motion only as it pertains to his claims of discriminatory failure to promote and retaliation under the ADEA and Ohio law. He expressly withdrew his claim for wrongful discharge in violation of Ohio public policy, and the Court hereby **GRANTS** Defendant's motion for summary judgment as it pertains to that claim.  Plaintiff failed to respond to the motion as it pertains to his claims for discriminatory discharge, as distinct from his retaliation claims.  The Court concludes that Defendant is entitled to summary judgment with respect to those claims, as well, although the Court considers the evidence Plaintiff has identified of intolerable work conditions in conjunction with his retaliation claims.[1]

---

[1]To the extent that Plaintiff intended to prosecute his claims for discriminatory discharge based upon his allegation that he was constructively discharged by virtue of intolerable work conditions, the Court does not find evidence of working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Easter v. Jeep Corp., 750 F.2d 520, 522-23 (6th Cir. 1984).  Accordingly, the Court concludes that Plaintiff cannot prove that he was constructively discharged.  He cannot, therefore, prove discriminatory discharge.

5

B.  The Summary Judgment Standard

        Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).

        The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence

favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

C.  Analysis

8

1.  Discriminatory Failure to Promote

The standards applicable to Plaintiff's age discrimination claims under the ADEA and parallel provisions of Ohio law are generally consistent.  See Anthony v. BTR Automotive Sealing Systems, Inc., 339 F.3d 506, 514 n.9 (6th Cir. 2003). Accordingly, the Court considers those claims together.

In order to establish a *prima facie* case of discrimination based upon a failure to promote, Plaintiff "must prove that [sic] (1) that he is a member of a protected class; (2) that he applied for, and did not receive, a job; (3) that he was qualified for the job; and (4) that a similarly-situated person who was not in the plaintiff's protected class received the job."  Anthony, 339 F.3d at 515.  Defendant tacitly concedes that Plaintiff can prove the first and second elements of the *prima facie* case as it pertains to Defendant's failure to promote him to the General Manager position.  Defendant argues, nevertheless, that Plaintiff cannot establish a *prima facie* case of discrimination because he cannot prove that he was qualified for the General Manager position.

Defendant bases its argument for summary judgment on its expectations of a General Manager and evidence it has identified that tends to suggest that Plaintiff did not satisfy those expectations.  As Plaintiff notes, however, "[a] court must

evaluate whether a plaintiff established his qualifications independent of the employer's proffered non-discriminatory reasons." <u>Cicero v. Borg-Warner Automotive, Inc.</u>, 280 F.3d 579, 585 (6th Cir. 2002). A district court errs when it fails to consider a plaintiff's qualifications independent of the reasons offered by the employer for an adverse employment action. <u>See id</u>.

In this case, Defendant has argued that it hires a Manager-in-Training and promotes an employee to Assistant General Manager only when it believes that the person is capable of becoming a General Manager. Apparently, Defendant believed that Plaintiff was capable of becoming a General Manager when it hired him in April 2002 and when it promoted him to Assistant General Manager in April 2003. The remaining factual issue is whether Plaintiff can prove that he was actually qualified for such a position as of April or May of 2004.

Any changes in Plaintiff's experiential qualifications between April 2003 and April 2004 would have been improvements. He had spent an additional year in restaurant management and had doubled his experience in management in Defendant's organization. Within that time period, Derek Robinson had recommended Plaintiff for General Manager Finishing School, the final step before promotion to General Manager. That recommendation suggests that

10

Derek Robinson believed that Plaintiff was nearly qualified for a General Manager position.

Defendant's arguments to the contrary relate to its reasons for failing to promote Plaintiff. The Court is persuaded that its consideration of Plaintiff's qualifications for purposes of determining whether Plaintiff is able to make a *prima facie* case must not include those reasons and the evidence relating to them. See Cicero, 280 F.3d at 585. For present purposes, the Court concludes that Plaintiff may be able to prove that he was qualified, in a general sense, for a General Manager position in Defendant's organization.

Because Plaintiff may be able to establish a *prima facie* case of age discrimination in Defendant's failure to promote him to a General Manager position, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its failure to promote Plaintiff. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978); Wrenn v. Gould, 808 F.2d 493 (6th Cir. 1987). The burden of persuasion, however, remains at all times upon the plaintiff. See Burdine, 450 U.S. at 256; Haynes v. Miller, 669 F.2d 1125, 1126-27 (6th Cir. 1982). Accordingly, if Defendant meets its burden of going forward, the burden shifts back to Plaintiff to demonstrate, by a preponderance of the evidence, that Defendant's articulated

11

reason for the adverse action is mere pretext.  See Burdine, 450 U.S. at 254-56; McDonnell Douglas v. Green, 411 U.S. 792, 804 (1973); Wrenn, 808 F.2d at 501.

In this case, Defendant states that its reasons for failing to promote Plaintiff to General Manager were "concerns about his judgment based upon his interactions with subordinate employees" and failure to improve "specific areas of his performance that he knew were required for promotion."  Reply memorandum, p.1.  The concerns about Plaintiff's judgment relate to the wild stories he told subordinates.  The areas of performance to which the second articulated reason applies are Plaintiff's failure to assert himself sufficiently in managing employees and to exert control and ownership on management issues.  Defendant, while not required to do so, has identified evidence in support of both of its articulated reasons for refusing to promote Plaintiff to General Manager.  The burden is upon Plaintiff to demonstrate that Defendant's articulated reasons are mere pretext.  See Burdine, 450 U.S. at 254-56.

"There are no hard and fast rules as to . . . what evidence is needed in order to establish pretext."  Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 97 (6th Cir. 1982).  The United States Court of Appeals for the Sixth Circuit has identified three models for proving pretext:

12

(1)  evidence that the reason stated by the
     defendant had no basis in fact;

(2)  evidence that that reason did not actually
     motivate the adverse employment action; and

(3)  evidence that the reason was insufficient to
     warrant the adverse employment action.

See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084

(6th Cir. 1994)(citing McNabola v. Chicago Transit Authority, 10

F.3d 501, 513 (7th Cir. 1993)).  In Kline v. Tennessee Valley

Authority, 128 F.3d 337, 346 (6th Cir. 1997), the court clarified

that

> when the first or third findings of pretext
> are demonstrated, a court is permitted to
> infer discrimination from the circumstances.
> Thus, when a plaintiff proves that the
> defendant's proffered reasons either have no
> basis in fact or are insufficient to motivate
> [the adverse action], a permissive inference
> of discrimination arises.

(Citations omitted).  The court distinguished those two

situations from the second pretext model identified in Manzer:

> the two situations discussed above [are
> distinguished] from the situation when the
> reasons offered by the defendant do not
> actually motivate the [adverse action].  In
> this situation, the plaintiff admits the
> factual basis underlying the employer's
> proffered explanation and further admits that
> such conduct could motivate [the adverse
> action].  . . . [I]n this situation, a
> plaintiff is required to introduce additional
> evidence of discrimination.

13

<u>Kline</u>, 128 F.3d at 346 (citations and quotation marks omitted; emphasis in original).  The court stated that, unless the plaintiff offers evidence of the type identified in the first or third <u>Manzer</u> model, the plaintiff must "introduce additional evidence of discrimination" in order to refute the defendant's stated reason for the adverse employment action.  <u>Id</u>.

Plaintiff attempts to demonstrate pretext in accordance with the first and second models identified in <u>Manzer</u>, <u>supra</u>.  He argues that his asserted lack of qualifications for promotion to General Manager had no basis in fact and argues that evidence suggests that Brock Anderson and Derek Robinson believed that he was prepared for such a promotion.  He also cites evidence suggesting that he was more qualified for such a promotion than was Scott Ellinger as of May of 2004.  He further argues that Defendant was not actually motivated by his lack of judgment as demonstrated by his frequent wild stories.  In support of the contention that the asserted reasons did not actually motivate Defendant's failure to promote him, Plaintiff identifies what he characterizes as direct evidence of age-related bias on the part of Defendant and evidence suggesting that no one actually believed that the stories were true.

Defendant's articulated reason relating to Plaintiff's qualifications is not that he lacked experience generally.  Rather, Defendant contends that certain aspects of Plaintiff's

management style were inconsistent with its requirements for
General Managers.  Defendant points specifically to Plaintiff's
failure to assert himself with employees and to take control and
exert ownership of the management of the restaurant.  Because
Plaintiff has not identified evidence suggesting that Scott
Ellinger lacked the qualifications Defendant has identified, his
pretext argument based upon a comparison of his experience to
that of Scott Ellinger is not relevant to the inquiry.  The
critical inquiry is whether Plaintiff can identify evidence
suggesting that Defendant's assertion that Plaintiff failed to
exert control with staff and to exert leadership and ownership in
the management of the restaurant lacked a basis in fact.

        The evidence Plaintiff cites in connection with his
qualifications for the General Manager position is at odds, in
some respects, with that identified by Defendant.  Plaintiff has
identified performance evaluations by Derek Robinson suggesting
that, for example, Plaintiff was projecting a strong sense of
leadership and ownership in the restaurant as of April of 2004.
In earlier evaluations, Derek Robinson had stated that Plaintiff
had won the respect of the restaurant staff and was approachable
and well liked.  As Plaintiff observes, these evaluations
contradict Defendant's assertion that Plaintiff did not lead and
did not exert ownership of the restaurant.

15

As evidence in support of its asserted reason, however, Defendant has identified evidence suggesting that, while he may have recommended Plaintiff for General Manager Finishing School, Derek Robinson never recommended Plaintiff for promotion to the General Manager position.  Derek Robinson testified at his deposition that he did not see Plaintiff consistently taking the steps necessary to "grab ahold and steer the store."  Robinson depo., p. 136.  He testified that Plaintiff would be ready for promotion to the General Manager position when he took those steps successfully but that he had not demonstrated readiness as of the time Mr. Robinson left Defendant's employ shortly before Scott Ellinger took over as General Manager of the Cincinnati restaurant.  His positive statements in evaluations of Plaintiff's performance notwithstanding, therefore, Derek Robinson's opinion regarding Plaintiff's readiness for the General Manager position provides a basis in fact for Defendant's first articulated reason for failing to promote Plaintiff.

Defendant also points out that Plaintiff has not identified admissible evidence suggesting that Brock Anderson, the first Regional Operation Director under whom Plaintiff worked, believed that Plaintiff was qualified in the articulated respects to assume a General Manager position.  In arguing that Brock Anderson had deemed him qualified for a General Manager position, Plaintiff relies exclusively upon his own statement of

16

May 3, 2004, in support of his internal claim of age
discrimination.  He stated there that Brock Anderson had told him
that he would be ready for promotion to General Manager within
three to four months of an unspecified date.  He further stated
that Brock Anderson had left Defendant's employ shortly after
making the statement.

Plaintiff's representation of what Brock Anderson told
him is, of course, hearsay unless it is an admission of a party
opponent.  See Jacklyn v. Schering-Plough Healthcare Prods., 176
F.3d 921, 927 (6th Cir. 1999); Fed. R. Evid. 801(d)(2)(D).
Plaintiff offers it for the truth of the matter allegedly
asserted by Brock Anderson, namely, that Plaintiff would soon be
ready for promotion to General Manager.  See Fed. R. Evid.
801(c).

In the employment context, a manager or other
supervisor is considered a party opponent when that person has
been involved in the decision or action giving rise to the
employee's claims.  See id. at 928.  In such circumstances, the
manager or supervisor acts within the scope of his agency or
employment in making the statements, and the statements may be
considered as those of the employer.  See id. at 927.  The
declarant must have been involved in the relevant decision in
order for the statement to be imputed to the employer as an
admission of a party opponent.  See id.

17

Plaintiff's statement in support of his internal complaint makes clear that Brock Anderson was not a decision-maker with respect to the failure to promote him.  While Mr. Anderson may have opined that Plaintiff would soon be ready for promotion, he left Defendant's employ before he could be involved in any decision-making with respect to actual promotion opportunities for Plaintiff.  His statement of opinion cannot, therefore, be considered a statement of the party opponent for purposes of Rule 801(d)(2)(D).  The Court may not consider it. Accordingly, the Court concludes that Defendant is correct in its assertion that Plaintiff has not identified evidence suggesting that Defendant's concerns about Plaintiff's lack of certain identified qualifications had no basis in fact.

The second non-discriminatory reason asserted by Defendant for the failure to promote Plaintiff to General Manager is its concern about Plaintiff's failure to exercise good judgment as demonstrated by his frequent wild stories.  Defendant observes that Plaintiff variously claimed to have been abducted by aliens, to have shipped a live baby from Viet Nam to the United States, and to have worked as a pimp.  Defendant has identified evidence from one of the decision-makers with respect to its failure to promote Plaintiff suggesting that she considered the stories an exercise of poor judgment.  See Manning Affidavit, ¶ 7.

18

Plaintiff contends that this articulated reason had no basis in fact, inasmuch as everyone who heard the stories knew that Plaintiff did not actually believe them. Defendant argues, however, that it was not fear that Plaintiff actually believed the stories that motivated its decision but, rather, that it was motivated by its belief that such stories were inappropriate and demonstrated poor judgment whether or not Plaintiff believed them.

Plaintiff admits telling the stories and has not identified evidence suggesting that Defendant did not believe that they reflected poor judgment on Plaintiff's part. In the face of evidence demonstrating that Defendant was, in fact, motivated, in part, by the stories, Plaintiff cannot, without adducing evidence to the contrary, identify a genuine issue of fact as to whether that reason had a basis in fact.

With respect to both of the reasons articulated by Defendant for failing to promote him, Plaintiff argues that the reasons were not Defendant's actual motivation. He contends that direct and circumstantial evidence suggest that Plaintiff's age was Defendant's true motivation.

Most of the circumstantial evidence to which Plaintiff refers is nothing more than his unsupported assertion that Defendant engaged in a pattern of recruiting and promoting younger people to General Manager positions at the expense of

19

older workers.  He offers no statistical evidence.  He does identify one recruiting advertisement referring to pop culture icons of the 1980s and suggests that it was a subtle effort to recruit younger people who would relate to the cultural references.  He concedes, however, that Defendant utilized various recruiting advertisements and approaches.  Without evidence that all of Defendant's recruiting efforts were aimed at younger people, Plaintiff's identification of an isolated advertisement as evidence of age-related bias is futile.

As further circumstantial evidence of age-related bias, Plaintiff identifies Defendant's failure to meaningfully investigate his internal complaint of age discrimination.  He contends that that failure demonstrated animus against him as an older worker.

The Court has carefully studied Plaintiff's internal complaint.  He alleged there that Derek Robinson had told him that Bernard Carpenter had told Derek Robinson that Buster Corley, a founder and the Chief Executive and Operating Officer of Defendant, had made statements suggesting that older managers be discharged.  Plaintiff alleged that Mr. Robinson had told him that Mr. Carpenter had made the statements in the context of directing Mr. Robinson to terminate Plaintiff's employment. Plaintiff acknowledges that Derek Robinson had refused to terminate his employment and that Mr. Carpenter had subsequently

20

left Defendant's employ.  He alleged age discrimination on the basis of those facts.

Plaintiff contends that Defendant failed to conduct a meaningful investigation of his complaint.  He concedes that Jennifer Frogge, then a Human Resources Manager for Defendant, spoke with Nancy Duricic, her supervisor, who had been present at the meeting during which Buster Corley was reported to have made the age-related comments.  Ms. Frogge testified at her deposition that Ms. Duricic advised her that Mr. Corley did not make the statements and that his actual comments were not age-related.  See Frogge depo., p.14, 50.  Based upon that information and her knowledge of Defendant's policies, Ms. Frogge concluded that Mr. Corley and his comments were not the sources of any age-related bias.  See id. at 18.  She also knew at the time of the investigation that Bernard Carpenter, the Regional Operations Director who allegedly attempted to act on the age-related bias, had left Defendant's employ.  See id. at 16.

Ms. Frogge testified that she did not conclude, as a result of her investigation, that Plaintiff was "wrong in his accusation that Mr. Carpenter was discriminating against him on the basis of his age."  Id., p. 18.  She merely concluded that Mr. Corley's statements had been "confused" or that Mr. Robinson or Mr. Carpenter had been "misinformed."  Id.  In any event, Ms.

Frogge wrote a letter to Plaintiff informing him that Defendant did not consider age as a factor in employment decisions.

The Court is persuaded that Plaintiff cannot establish pretext in accordance with the second Manzer model on the basis of the evidence related to Defendant's investigation of his internal complaint of age discrimination. The circumstances underlying that investigation suggested that one of two people may have been biased against Plaintiff on the basis of his age. One was Bernard Carpenter, who was no longer in Defendant's employ and could not affect Plaintiff's promotion chances. Any further investigation of age-related bias on his part would have been pointless. The other was founder Buster Corley. Ms. Frogge satisfied herself that Mr. Corley had not made the age-related comments that were attributed to him. After assuring Plaintiff that Defendant did not consider age a relevant factor in employment decisions, Ms. Frogge considered her investigation concluded. The investigation was not so meaningless that it can stand as evidence that age was the actual motivation for Defendant's failure to promote Plaintiff.

As the Court has noted, Plaintiff has also argued that he can establish through direct evidence that his age was Defendant's actual motivation for failing to promote him. Buster Corley's alleged statements and their repetition by Bernard Carpenter constitute the direct evidence to which Plaintiff

22

refers.  Plaintiff learned of Mr. Corley's alleged statements from Derek Robinson, who learned of them from Bernard Carpenter, who purported to have heard them from Mr. Corley.  Defendant contends that the alleged statements are inadmissible hearsay and not properly considered by the Court in the context of a motion for summary judgment.

Mr. Corley's statements, in and of themselves, are not offered by Plaintiff for the truth of the matters asserted therein.  Rather, Plaintiff offers them as evidence of age-related bias on the part of Mr. Corley.  The statements are, accordingly, not hearsay.  See Fed. R. Evid. 801(c).

Plaintiff did not, however, hear the alleged statements from Buster Corley.  Rather, he heard them from Derek Robinson, who, Plaintiff claims, heard them from Bernard Carpenter.  Mr. Carpenter's statements to Derek Robinson are hearsay, inasmuch as they are offered by Plaintiff as proof that Buster Corley made the statements attributed to him by Mr. Carpenter, unless they are defined otherwise by Rule 801(d)(2)(D).  See Fed. R. Evid. 801(c).  Mr. Robinson's statement that Bernard Carpenter relayed the statements to him is also hearsay, inasmuch as it is offered by Plaintiff as proof that Mr. Carpenter repeated Mr. Corley's alleged statements, unless it is defined otherwise by Rule 801(d)(2)(D).  See id.  The Court may consider Mr. Carpenter's and Mr. Robinson's statements only to the extent that they may be

23

considered admissions of a party opponent and, thus, defined as
not hearsay under Rule 801(d)(2)(D).

Mr. Carpenter was apparently involved in Defendant's
failure to promote Plaintiff to a General Manager position in the
period prior to his departure from Defendant's employment.
Evidence identified by Plaintiff suggests that Mr. Carpenter did
not believe that Plaintiff was a suitable candidate for such a
position. Defendant does not deny that, in his capacity as
Regional Operations Director, Mr. Carpenter had some authority
over such promotion decisions. Accordingly, while he was not
involved in the decision to promote Scott Ellinger, Bernard
Carpenter may have been involved, directly or indirectly, in the
events that led to Defendant's failure to promote Plaintiff to a
General Manager position. Those facts lead the Court to the
conclusion that Bernard Carpenter's alleged statements suggesting
that Buster Corley disfavored older managers may be considered
admissions of a party opponent. See Jacklyn, 176 F.3d at 927.

That conclusion moves the analysis only so far,
however. Plaintiff did not hear the statements from Bernard
Carpenter. He represents that Derek Robinson relayed them to
him. The second inquiry, therefore, is whether Mr. Robinson's
statement to Plaintiff regarding what Mr. Carpenter told him is
also an admission of a party opponent.

24

These circumstances are similar to those presented in
Moore v. Kuka Welding Systems & Robot Corp., 171 F.3d 1073 (6th
Cir. 1999).  There, the court examined whether the declarant to
the plaintiff was considered an agent by the previous declarant,
who was himself acting as an agent of the employer and in the
scope of his agency when he made the alleged statements to the
latter declarant.  See id. at 1081.  The Court concluded that the
latter declarant's statements also fell within the definition of
Rule 801(d)(2)(D) because the previous declarant told him to pass
the message along to the plaintiff and considered the latter
declarant to be an agent of the employer in doing so.  See id.

Plaintiff has not suggested that Bernard Carpenter told
Derek Robinson to tell Plaintiff that Buster Corley disfavored
older managers.  The evidence Plaintiff has identified does not
suggest that Derek Robinson was authorized by Bernard Carpenter
or Buster Corley to make the statement to Plaintiff.  The Moore
analysis does not, therefore, support treatment of Derek
Robinson's alleged statement to Plaintiff as an admission of a
party opponent.  See Moore, 171 F.3d at 1081.

Defendant has identified evidence that suggests that
Derek Robinson did not recommend Plaintiff for a promotion to a
General Manager position.  Mr. Robinson testified that he did not
believe that Plaintiff was ready for such a promotion as of April
of 2004 when Mr. Robinson left Defendant's employ.  See Robinson

depo., p. 136.  Plaintiff has not argued that Mr. Robinson was motivated by age-related bias in failing to recommend Plaintiff for promotion.  He has suggested, however, that Mr. Robinson was acting upon Bernard Carpenter's statements regarding Plaintiff and that Plaintiff's age motivated those statements.  Were Plaintiff able to adduce evidence of Bernard Carpenter's statements from Derek Robinson, the statements would unquestionably be admissible.

At his deposition, Mr. Robinson denied that Bernard Carpenter had made age-related comments relating to Plaintiff and that Mr. Carpenter had reported age-related statements by Buster Corley.  See Robinson depo., pp. 72, 139.  He testified that Bernard Carpenter never gave him a reason for directing him to terminate Plaintiff's employment.  See id., pp. 20, 67-68.  He testified that he understood the comments of Messrs. Corley and Carpenter to relate to managers with longer tenure in Defendant's organization who were not sufficiently concerned with performance and that he understood the comments to be directed at him, in part.  See id., pp. 73-74.  Mr. Robinson was not in the protected age group at the time.  Plaintiff cannot establish that Bernard Carpenter made age-related comments through the testimony of Derek Robinson, and Plaintiff's own testimony to that effect is hearsay.  Accordingly, he cannot establish pretext on the basis of direct evidence, and Defendant is entitled to summary judgment

26

with respect to his claims of age discrimination in Defendant's failure to promote him to General Manager.

      2.  Retaliation

      The parties agree that in order to establish a *prima facie* case of retaliation in violation of the ADEA and the parallel Ohio statute Plaintiff must prove each of the following:

    (1) that he engaged in protected activity;

    (2) that Defendant knew of the protected activity;

    (3) that Defendant thereafter took an adverse employment action against him; and

    (4) that the adverse employment action was causally connected to the protected activity.

See <u>Christopher v. Stouder Memorial Hospital</u>, 936 F.2d 870, 877 (6th Cir.), <u>cert.</u> <u>denied</u>, 502 U.S. 1013 (1991).  They further agree that Plaintiff's internal complaint of age discrimination, filed on May 3, 2004, constituted protected activity and that Defendant knew of that protected activity.  Defendant contends, however, that Plaintiff cannot prove that it took any adverse employment action against him after May 3, 2004, or that any such action was causally connected to his internal complaint.

      In opposition to Defendant's motion for summary judgment, Plaintiff acknowledges that he did not engage in the protected activity of filing an internal complaint until after he

was certain that Defendant would not consider him to replace
Derek Robinson as General Manager.  Accordingly, the failure to
promote was not causally connected to his protected activity.
Plaintiff identifies the following as adverse actions taken by
Defendant after he filed his internal complaint:  changes in his
responsibilities and schedule, sporadic access to e-mails from
the corporate office, failure of the new Regional Operations
Director to meet with Plaintiff when he met with other managers,
and changes in restaurant policies without notice to Plaintiff.
See Memorandum in opposition, pp. 10-11.

Plaintiff has not identified evidence suggesting that
he suffered a change in pay or title after he filed his internal
complaint.

> [A] materially adverse change in the terms and
> conditions of employment must be more disruptive than a
> mere inconvenience or an alteration of job
> responsibilities.  A materially adverse change might be
> indicated by a termination of employment, a demotion
> evidenced by a decrease in wage or salary, a less
> distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or
> other indices that might be unique to a particular
> situation.

Bowman v. Shawnee State University, 220 F.3d 456, 461-62 (6th
Cir. 2000).  Considering the evidence identified by Plaintiff in
the most favorable light possible, the Court can conceive of only
one adverse employment action: significantly diminished material
responsibilities.  Plaintiff has not identified evidence

28

suggesting that the responsibilities he claims to have lost were "material" or that the diminishment was "significant." He may be able to prove both points, but he has not yet attempted to do so. He has also failed to demonstrate that he can establish that any reduction in his material responsibilities was causally connected to his internal complaint.

Defendant notes that the changes in responsibilities upon which Plaintiff relies followed the introduction of a new General Manager at the Cincinnati restaurant. Plaintiff's burden is to establish that the changes were caused by his internal complaint and not by the change in management at the restaurant. As evidence of a causal connection, however, Plaintiff identifies only the temporal proximity of the events, the alleged company policy of eliminating older managers, and the failure to meaningfully investigate his complaint. The Court has addressed the lack of evidence in support of the alleged ageist policy and the investigation of Plaintiff's internal complaint. Neither constitutes evidence of a causal connection between the complaint and the reduction of Plaintiff's management responsibilities.

Temporal proximity between the protected activity and the adverse employment action may give rise to an inference that a causal connection exists. See Moon v. Transport Drivers, Inc., 836 F.2d 226, 229 (6th Cir. 1987). For present purposes, the Court assumes that Plaintiff may be able to establish a causal

29

connection on the basis of the very short time lapse between his complaint and the alleged adverse actions.  Accordingly, the Court concludes that Plaintiff may be able to establish a *prima facie* case of retaliation in violation of the ADEA and parallel Ohio law.

As in cases of discrimination, when a retaliation plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action.  See <u>Wrenn</u>, 808 F.2d at 501. The burden of persuasion remains upon the plaintiff at all times, however.  See <u>Burdine</u>, 450 U.S. at 256; <u>Haynes</u>, 669 F.2d at 1126-27.  Accordingly, once the employer meets its burden of going forward, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's articulated reason for the adverse action is mere pretext.  See <u>Burdine</u>, 450 U.S. at 254-56; <u>McDonnell Douglas</u>, 411 U.S. at 804; <u>Wrenn</u>, 808 F.2d at 501.

Defendant's legitimate, non-retaliatory reason for the alleged adverse actions is that Scott Ellinger, the new General Manager of the Cincinnati restaurant, chose to delegate responsibility differently than Derek Robinson had done.  See Ellinger depo., p. 27.  The burden is upon Plaintiff to prove that that reason is mere pretext.  See <u>Burdine</u>, 450 U.S. at 254-56.

In an effort to establish pretext, Plaintiff argues only that Mr. Ellinger's explanation is unworthy of belief because he did not explain the changes to Plaintiff when he made them. That suggestion, wholly unsupported by evidence, is not sufficient to prove that the articulated reason had no basis in fact, did not actually motivate the alleged adverse actions, or was insufficient to cause the adverse actions. Accordingly, Plaintiff has not identified evidence suggesting that Defendant's articulated reason for the alleged adverse actions was mere pretext. See Manzer, 29 F.3d at 1084. The Court concludes, therefore, that Defendant is entitled to summary judgment with respect to Plaintiff's claims of retaliation.

D. Conclusion

For those reasons, Defendant's motion for summary judgment (Doc. 19) is hereby **GRANTED**. This action is **CLOSED**.

**IT IS SO ORDERED.**

_____/s/_____
Sandra S. Beckwith, Chief Judge
United States District Court